IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| KINDRA HART, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | 1:25-CV-613-ADA-ML |
| TEXAS MILITARY DEPARTMENT, | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO THE HONORABLE ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE:

Before the court is Defendant Texas Military Department's ("TMD") Motion to Dismiss

Plaintiff's First Amended Complaint and Motion to Stay Discovery (Dkt. 28, Mot.) and Plaintiff

Kindra Hart's Response (Dkt. 32, Resp.).[1] TMD did not reply. Having considered the pleadings

and the relevant case law, and finding oral arguments unnecessary, the undersigned submits the

following Report and Recommendation to the District Judge.

**I.    BACKGROUND[2]**

**A.    Factual Background**

Hart joined the TMD in 2017 as a Texas State Guardsman. Dkt. 26 (FAC) ¶ 5.1. On January

9, 2023, Hart was activated full time as a W2 state employee for the Operation Lone Star Mission

and assigned to report to Weslaco, Texas to begin working as a Watercraft Technician. *Id.* ¶ 5.2.

---

[1] The motion was referred by United States District Judge Alan D Albright to the undersigned for a Report and Recommendation as to the merits or for disposition, as appropriate, pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. *See* Dkt. 4 (Magistrate Referral Order, dated February 27, 2025).

[2] At this stage of the proceedings, all well-pleaded facts are taken as true.

In July 2023, she was transferred to McAllen, Texas to be a Medical Noncommissioned Officer. *Id.* ¶ 5.3. After her transfer, her direct supervisor was Major William Przybyla. *Id.*

In early September 2023, Hart informed Przybyla and her immediate team that she was pregnant. *Id.* ¶ 5.4. On October 11, 2023, Second Lieutenant Brandi Delbosque, at Major Przybyla's behest, gave Hart a verbal counseling for disobeying a superior officer and direct order, which Hart alleged was baseless as she followed the chain of command. *Id.* Also in early October 2023, a new team member, with no medical background, was added to the team to learn the jobs Hart performed. *Id.* ¶ 5.5. At that time, Hart had not given TMD a date for her maternity leave. *Id.*

On October 18, 2023, Hart visited her OBGYN who advised that Hart must avoid traveling due to her pregnancy progressing,[3] and Hart immediately shared that information and the doctor's letter with Major Przybyla. *Id.* ¶ 5.6. Major Przybyla said he would speak with the National Guard and Austin Headquarters Colonels to see if they could make an accommodation for Hart, such as permitting her to work from home. *Id.*

On October 22, 2023, Hart returned to McAllen because her paid personal pass was ending. *Id.* ¶ 5.7. On October 24, 2023, Major Przybyla informed Hart that her work from home request had been denied, she was to remain on mission, and she was required to stay in the Joint Operations Area ("JOA"). *Id.* ¶ 5.8. Hart asked the team if working from Austin could be a possibility, so that she would be located only 4 hours from home instead of 9 hours, but she did not hear of any follow up on that request. *Id.* Because Hart could not remain working in the JOA due to her OBGYN's orders, Przybyla informed her (on October 24, 2023) that her last day would be October 28, 2023. *Id.* On October 28, 2023, TEOC[4] informed Hart by email that she was

---

[3] Hart later asserts that her OB's office and home are 515 miles from the Joint Operations Area. SAC ¶ 5.8. Presumably, Hart's home and OB's office are located in Cherokee County. *Id.* ¶ 2.1.

[4] Despite the undersigned previously calling attention to this acronym, Hart still has not explained its meaning. Dkt. 21 at 2 n.4.

"EOM'd (end of mission)," but she did not receive any formal documents to this effect. *Id.* On November 9, 2023, Hart received the formal documents, backdated to October 28, 2023, confirming her end of mission. *Id.*

Hart alleged that her role was medical administration and was all conducted through a computer; thus, working remotely, or at least closer to home in Austin, was an "easy reasonable [sic] accommodation." *Id.* ¶ 5.14. Hart alleged that her work from home request was denied about a week before a male employee, Lieutenant Andrew Canham, was granted an accommodation to work from Austin, which was close to his home, due to a non-pregnancy related medical issue. *Id.*

**B.  Procedural History**

This case involves claims for gender and pregnancy discrimination under Title VII and the Pregnancy Discrimination Act. Hart's Original Complaint included a disability discrimination claim, which she voluntarily withdrew. Dkt. 16 at 8. TMD moved to dismiss Hart's Original Complaint, and the court dismissed Hart's gender and pregnancy discrimination claim without prejudice and with leave to amend. Dkt. 21 (R&R), *adopted by*, Dkt. 24. Specifically, the undersigned identified that Hart had failed to plead facts sufficient to support her allegations that Major Przybyla attempted to have her disciplined after finding out she was pregnant; another employee was allowed to work from Austin; her position required travel; or that her accommodation request was reasonable. Dkt. 21 at 6 (R&R).

In her FAC, Hart asserts TMD unlawfully discriminated against her by discharging her because of her gender or pregnancy. FAC ¶¶ 6.2-6.3. TMD has moved to dismiss her claim under Rule 12(b)(6).

## II.    STANDARD OF REVIEW

When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6), the complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be taken as true. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Although Federal Rule of Civil Procedure 8 mandates only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief," this standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. v. Twombly*, 550 U.S. 544, 555-57 (2007). Rather, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. at 570. The Supreme Court has made clear this plausibility standard is not simply a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The standard is properly guided by "[t]wo working principles." *Id*. First, although "a court must 'accept as true all of the allegations contained in a complaint,' that tenet is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. Second, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, in considering a motion to dismiss, the court must initially identify pleadings that are no more than legal conclusions not entitled to the assumption of truth, then assume the veracity of well-pleaded factual allegations and determine whether those allegations plausibly give rise to an

entitlement to relief. If not, "the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

## III.    ANALYSIS

TMD moves to dismiss Hart's gender and pregnancy discrimination related claims because they did not plausibly allege a causal link between pregnancy and the challenged action, nor did the FAC add new factual matter. Mot. at 2-3.

"The Pregnancy Discrimination Act makes clear that Title VII's prohibition against sex discrimination applies to discrimination based on pregnancy." *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 210 (2015). "It also says that employers must treat 'women affected by pregnancy . . . the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work.'" *Id.* (quoting 42 U.S.C. § 2000e(k)).

For a pregnancy-based sex discrimination claim, an employer is liable for disparate treatment, which occurs when the employee's "protected trait actually motivated" the employer to take the adverse employment action. *Fairchild v. All Am. Check Cashing, Inc.*, 815 F.3d 959, 966 (5th Cir. 2016) (citing *Young*, 575 U.S. at 212). A "plaintiff can prove disparate treatment either (1) by direct evidence that a workplace policy, practice, or decision relies expressly on a protected characteristic, or (2) by using the burden-shifting framework set forth in *McDonnell Douglas* [*Corp. v. Green,* 411 U.S. 792 (1973)]." *Id.*

A plaintiff can make out a prima facie case "by showing that she belongs to the protected class, that she sought accommodation, that the employer did not accommodate her, and that the employer did accommodate others 'similar in their ability or inability to work.'" *Luke v. CPlace Forest Park SNF, L.L.C.*, 747 F. App'x 978, 979 (5th Cir. 2019) (citing *Young*, 575 U.S. at 229 (citing 42 U.S.C. § 2000e(k)). If she does, the "employer may then seek to justify its refusal to

5

accommodate the plaintiff by relying on 'legitimate nondiscriminatory' reasons for denying her accommodation." *Id. (quoting McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). If the employer offers that justification, the onus returns to the employee to show that the reasons given by the employer were not its true reasons but a pretext for discrimination. *Id.*

There is no current dispute that Hart sufficiently alleged she belongs to a protected class, that she sought accommodation, and that TMD did not provide any accommodation. *See, e.g.*, Dkt. 21 (R&R) at 5.

TMD first argues that under the Pregnancy Discrimination Act, a disparate treatment claim requires factual allegations that the comparator was similar in the ability or inability to work. Mot. at 3. Hart made the barest addition to her allegations in the FAC, but she alleged that the comparator, Lt. Canham, had a medical issue and was granted an accommodation to work off-site—away from the JOA—in Austin. FAC ¶ 5.14. Hart also asserted that she would be able to complete all her work off-site, from home or from Austin, on a computer. *Id.* While the factual allegations are sparse, the undersigned does recognize Hart is at a disadvantage prior to discovery and may not be privy to all the facts central to her claim, such as Lt. Canham's medical limitations or exact job requirements. *See Cicalese*, 924 F.3d at 768 ("[S]crutinizing whether [the plaintiffs'] fellow employees were really 'similarly situated' . . . was more suited to the summary judgment phase. . . . At [the pleading stage], a plaintiff need only plausibly allege facts going to the ultimate elements of the claim to survive a motion to dismiss."). As it stands, she has alleged that another employee, similarly capable of completing his work remotely, was granted leave to work off-site and closer to home.

TMD next argues that Hart has failed to allege harassment or a hostile work environment. Mot. at 3. While the undersigned agrees that Hart has not stated a claim for a hostile work

environment, the undersigned does not read Hart's FAC as asserting that claim. Furthermore, Hart has now sufficiently alleged that she was disciplined by Lt. Delbosque without a legitimate reason. This allegation, while insufficient to support a hostile work environment claim, can lend support to her disparate-impact claim.

Finally, TMD argues that the end of mission designation should not be treated as a termination.[5] Mot. at 3. However, Hart alleged that she could not remain working in the JOA due to her OBGYN's orders, which caused Major Przybyla to determine (on October 24, 2023) that her "last day" would be October 28, 2023. SAC ¶ 5.8. Four days later, on October 28, 2023, Hart was informed that she was "EOM'd." *Id.* ¶ 5.9. These allegations are sufficient to show that Major Przybyla intended to terminate her employment irrespective of the end of mission. Accordingly, Hart has alleged she suffered an adverse employment action.

 TMD raises no further arguments in the instant Motion and failed to file a reply despite the opportunity to do so. Thus, the undersigned finds that Hart's FAC has crossed the threshold, albeit barely, into plausibly alleging her claim for gender and pregnancy discrimination.

## IV.    MOTION TO STAY DISCOVERY

Finally, TMD moves to stay discovery throughout the pendency of the Motion to Dismiss (Dkt. 28). In light of the undersigned's recommendation to deny TMD's Motion to Dismiss (Dkt. 28), the court **DENIES** TMD's Motion to Stay (Dkt. 28).

## V.    ORDER AND RECOMMENDATIONS

The undersigned **RECOMMENDS** that the District Judge **DENY** Defendant's Motion to Dismiss (Dkt. 28).

Furthermore, the undersigned **DENIES** Defendant's Motion to Stay Discovery (Dkt. 28).

---

[5] TMD further argues the court already found no factual basis to treat the designation as a termination, citing the previous Report and Recommendation (Dkt. 21); however, the undersigned made no such finding at that time.

## VI.    OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).

SIGNED February 26, 2026.

_____

MARK LANE
UNITED STATES MAGISTRATE JUDGE

8